DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., PUBLIC GUARDIANSHIP PROGRAM,**
Appellant,

v.

**THE GUARDIANSHIP OF JENNIFER JAFFE** and **FERD AND GLADYS ALPERT JEWISH FAMILY & CHILDREN'S SERVICE,**
Appellees.

No. 4D15-357

[November 4, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Krista Marx, Judge; L.T. Case No. 2006GA000194XXXXNB.

Robert J. Hauser of Pankauski Law Firm PLLC and Rena J. Taylor of Legal Aid Society of Palm Beach County, Inc., West Palm Beach, for appellant.

Antony P. Ryan, Regional Counsel, and Melanie Casper, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellee Jennifer Jaffe.

Mitchell I. Kitroser of Mitchell I. Kitroser, P.A., North Palm Beach, for appellee Ferd and Gladys Alpert Jewish Family & Children's Service.

WARNER, J.

The Legal Aid Society of Palm Beach County, Inc., Public Guardianship Program, appeals an order appointing it to serve as successor guardian to a previously-declared incapacitated ward. The court appointed Legal Aid, despite its objection that to act as guardian for this ward would require it to exceed the statutorily set ratio of guardians to wards. To overcome this objection, the court ordered Legal Aid to transfer one of its present wards to the ward's withdrawing guardian, Ferd and Gladys Alpert Jewish Family & Children's Service of Palm Beach County, Inc. ("AJFCS"). Because the court had no authority to involuntarily appoint Legal Aid, nor to order the transfer of other wards to another guardian, we reverse.

In 2006, the subject ward was determined to be incapacitated. Since that time, the ward has had at least six court-appointed guardians, the most recent being AJFCS. AJFCS petitioned to resign, claiming that the situation with the ward had become "untenable." As guardian, AJCFS could not control the actions of the ward or the ward's family and their effect on the ward's person and property. The ward's mother distributed money directly to the ward, and arranged medical appointments and treatment without consulting AJFCS. The ward was in an "unhealthy relationship" with a man. She also drove her vehicle, even though her right to drive had been taken away in the incapacity proceedings. Because AJFCS could not control either her person or property, it sought to withdraw.

In its petition, AJFCS suggested that the Statewide Public Guardian appoint a local public guardian in its place, as the ward did not have sufficient funds at the present time for a private guardian. It did not provide notice, however, to either the Statewide Public Guardian or Legal Aid, the local public guardian, as is required by Florida Probate Rule 5.560(c).

Without notice to Legal Aid, the court approved the resignation of AJFCS and appointed Legal Aid as successor plenary guardian. A copy of the order was served on Legal Aid, which immediately filed a motion for rehearing based upon its lack of notice. It asserted that it did not accept the appointment as successor guardian because, if it took another ward, it would exceed the statutory ratio limiting the number of wards it could serve. The court granted the motion for rehearing.

At the new hearing, the probate court made it clear that it had approved AJFCS's resignation and would not re-appoint it as guardian. Despite its best efforts, AJFCS was not able to protect the ward from herself and admitted that it was "stumped" by this case.

Legal Aid contended that the court lacked authority to order the public guardian to take the case. No statutory authority existed for the court to compel its appointment. Moreover, section 744.708(7), Florida Statutes (2015), provides for a staff-to-wards ratio of one to forty. Legal Aid was at that ratio and could not take on any more wards.

Ultimately, to remedy Legal Aid's over-capacity concern, the court ordered AJFCS to take over as guardian of a ward of Legal Aid, although the court did not designate any specific ward. The court then denied Legal

Aid's motion for rehearing, confirming Legal Aid's appointment as guardian of the ward. Legal Aid now appeals the order of appointment.

Simply stated, the question presented in this case is whether the trial court had any authority to appoint Legal Aid as guardian of this ward, over its objection and despite the fact that this would cause it to exceed its statutory capacity. The answer is that there is no authority for the court to make this involuntary appointment. No statute or rule provides any such authority, and the history of Florida Probate Rule 5.560 provides evidence that the court does not have any discretionary authority to appoint the public guardian.

Florida's Public Guardianship law was created by the Legislature in 1986. *See* § 744.701, Fla. Stat. (2015). Its purpose was to permit the establishment of offices of public guardianship throughout Florida to provide guardianship services to incapacitated persons who could not afford a private guardian and had no family members to assume the task of guardianship. § 744.702, Fla. Stat. (2015). The Legislature created a Statewide Public Guardianship Office to coordinate these offices, including the development of standards for public guardians. § 744.7021, Fla. Stat. (2015). Funding for public guardians comes through state funding as well as local efforts. *See* § 744.706, Fla. Stat. (2015). "The public guardian . . . primarily serve[s] incapacitated persons who are of limited financial means, as defined by contract or rule of the Department of Elderly Affairs." § 744.704(3), Fla. Stat. (2015).

Undoubtedly recognizing that the need for public guardianship may be greater than the resources available, the Legislature limited the number of wards a public guardian may serve based upon a staff-to-ward ratio. "The ratio for professional staff to wards shall be 1 professional to 40 wards." § 744.708(7), Fla. Stat. (2015). In 1996, this provision was amended so that "[t]he Statewide Public Guardianship Office may increase or decrease the ratio after consultation with the local public guardian and the chief judge of the circuit court." *Id.* It is thus not within the authority of a single judge within a circuit to compel the public guardian to exceed the statutorily imposed ratio.

Additionally, nowhere in the statute does the Legislature direct the public guardians, many of whom are appointed through a contract with the Statewide Public Guardianship Office, to serve as guardian for all indigent incapacitated wards. In contrast, for example, public defenders are explicitly required by statute to represent any indigent individual charged with a felony, as well as other mandatory proceedings. *See, e.g.*, § 27.51, Fla. Stat. (2015). In other words, if the Legislature had deemed it

3

appropriate to mandate that the public guardian be appointed for all indigent incapacitated persons, it could have provided for the same by statute. It did not.

The history of Florida Probate Rule 5.560, which provides procedural rules for petitions for the appointment of a guardian to an incapacitated person, also confirms that the court has no authority to make an involuntary appointment of a public guardian. Prior to 1989, Florida Probate Rule 5.560(b) provided that "[t]he court on its own motion may appoint the public guardian without notice to the public guardian." (Emphasis omitted). This sentence had been added by the Florida Supreme Court itself in a rule revision in 1987. *See In re Rules of Probate & Guardianship Procedure (Pub. Guardianship)*, 517 So. 2d 675, 676 (Fla. 1987). However, this language disappeared from the rule in 1989, when the court adopted interim rules after the Legislature substantially rewrote the guardianship law. *In re Amendment to Florida Probate Rules Part III (Guardianship)*, 551 So. 2d 452 (Fla. 1989). The authority to appoint the public guardian *sua sponte* has never reappeared in the rules. Instead, the present rules provide notice to the guardian if a petitioner requests the appointment of a public guardian. *See* Fla. Prob. R. 5.560(c).

To remedy the ratio problem, the court in this case compelled a "swap" of wards by requiring Legal Aid to transfer the guardianship of one if its present wards for the ward in this case. This, too, is contrary to statutory authority. First, "swapping" wards suggests that these incapacitated individuals are fungible. They clearly are not. Every ward has a guardianship plan, *see* § 744.363, Fla. Stat. (2015), and public guardians are required by statute to personally visit the ward at least once each calendar quarter, *see* § 744.708(6), Fla. Stat. (2015). Thus, there is every expectation that the public guardian will develop some rapport with the ward. A guardian is not allowed to resign without assurances that the ward's interest will not be placed in jeopardy. *See* § 744.467, Fla. Stat. (2015). The court's order compelling Legal Aid to "swap" out a ward runs contrary to and ignores the principles underlying these statutes.

Furthermore, Legal Aid is not only at its capacity for wards, it has a waiting list. That list is comprised of persons who meet eligibility requirements, as defined by the Department of Elderly Affairs. *See* § 744.704(3), Fla. Stat. (2015). Ordering Legal Aid to accept this ward, whose eligibility has not even been determined, prevents the public guardian from serving those incapacitated persons who are already eligible and awaiting appointment. There is no provision in the statute for the court to determine eligibility. That is left to the executive branch through

4

the Department of Elderly Affairs. By ordering Legal Aid to act as guardian of this ward, the court is disregarding an executive branch function.

Obviously, the court felt that this particular ward presented a real dilemma. The court found that AJFCS could no longer serve as her guardian when she refused to comply with their directives. As there was no evidentiary hearing on the issue, we cannot comment on this evaluation. However, section 744.471, Florida Statutes (2015), precludes the court from relieving a guardian from his or her duties until a successor is appointed. Therefore, the court should not have allowed the resignation of AJFCS until it had properly appointed another guardian.

We recognize that there are few options available to the court. And, as Legal Aid points out, there is no guarantee that it would have any better success with this ward than AJFCS, even it if could accept the appointment as the ward's guardian. If the ward is truly a danger to herself, involuntary hospitalization or placement may be needed, for which court approval must be obtained.[1] *See* § 744.3215(4), Fla. Stat. (2015). The court may also request the involvement of the chief judge and the Statewide Public Guardianship Office to review the capacity of the public guardian in Palm Beach County.

For the foregoing reasons, we hold that the court has no authority to make an involuntary appointment of Legal Aid as the public guardian of an incapacitated ward. We reverse and remand for further proceedings.

CONNER, J., and LEVEY COHEN, MARDI, Associate Judge, concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

---

[1] We also note in the record on appeal that the ward has petitioned to have her capacity restored.